Hyman, C. J.
A writ of habeas corpus was issued, ordering Julius A. Noble, chief warden and keeper of the work-house of the City of New Orleans, to produce before this court the body of John Harris, who, in his petition for the writ, averred that he was illegally deprived of his liberty by Noble, who justified his detention by virtue of a warrant of commitment issued by J. A. Letten, Recorder of the Third District of the City, which warrant commanded Noble to keep him, Harris, because he was convicted of being a vagrant by the Recorder, in safe custody during six months at hard labor, from 20th February, 1868. That the Recorder, without trial known to law, and in violation of the Constitution of the State, proceeded in a summary manner to condemn him to imprisonment at hard labor in the work-house for the term of six months. That the Recorder had no authority to hear and determine the case of the petitioner, and that, therefore, the proceedings before the Recorder, his sentence and warrant of commitment were null.
Noble answered that he detained Harris by authority of the warrant described, which he annexed to his answer.
By the 121st section of an act entitled “An act relative to crimes-and offenoes,” approved March 14th, 1855, the Recorders of the City of New *326 Orleans are authorized to determine who are vagrants under description of such by section 120th of the act, and to commit them to the workhouse for a term not exceeding six months, where they are to be kept at hard labor.
Art. 103 of the Constitution of 1852, declared that prosecutions should be by indictment or information, and that the accused should have a speedy public trial by an impartial' jury of the vicinage; and Art. 124 of same Constitution declared that the Legislature might vest in the Recorders of the City of New Orleans such criminal jurisdiction as might be necessary for the punishment of minor crimes and offences, as the peace and good order of the city might require.
In 1859, it was decided that the acts of the Legislature, in vesting Recorders of the city with the trial of minor crimes and offences, did not violate Art. 103, which requires prosecutions tó be by indictment or information, because the Legislature was expressly authorized by Art. 124 to vest such power in Recorders. See 14 Annual page 38. And in 1860 it was decided that Art. 124 was exceptional to Art. 103, and that minor crimes and offences could be tried, under authority of legislative .enactments, by Recorders, without the solemnity of jury trial, and without indictment or information. 15 An. p. 190.
Thus, it was settled under the Constitution of 1852, that the Legislature could vest in Recorders the right if trying persons for minor offences, without indictment or information, and that when Recorders tried persons for such offences under legislative authority, thoy were not entitled to a jury trial; and 120 and 121 sections of the act cited is still in force empowering Recorders to try vagrants, without jury, or indictment or information, unless they be in conflict with the Constitution of 1864, as they are not repealed. See Constitution 1864, Art. 149. We do not perceive in sections 120 and 121 of the acts of 1855 any conflict with the Constitution of 1864.
Article 105 of the Constitution has provisions similar to the provisions in article 103 of the Constitution of 1852. The only difference in their provisions, is that the former declares that the accused shall have a speedy public trial by an impartial jury of the parish in which the offence was committed, while the latter declared that the accused should have a speedy public trial by an impartial jury of the vicinage; article 133 of the Constitution of 1864 differs not from article 124 of the Constitution of 1852, as minor crimes and offences are contained in the expression minor offences.
It is decreed that the application of John Harris to be discharged from imprisonment be refused, at his costs.